## Cowherd v. Commonwealth.

(Decided November 26, 1926.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Abduction—Evidence Held Sufficient for Jury and to Sustain Conviction for Detaining Woman Against Her Will with Intent to Carnally Know Her (Kentucky Statutes, Section 1158).—Evidence held sufficient to take case to jury and to support convic-

tion for detaining woman against her will with intent to car-
nally know her, under Kentucky Statutes, section 1158.

2.  Abduction—Crime of Detaining Woman Against Her Will with In-
tent to Carnally Know Her May be Complete Without Commission
of Any Act Evidencing Purpose of Carnally Knowing Her Against
Her Will.—Crime of detaining woman against her will with intent
to carnally know her may be complete without commission of any
act evidencing purpose of carnally knowing her against her will,
since only requirement is detention against  will  with such
purpose.

GEORGE G. BUCKINGHAM and CLEM W. HUGGINS for appel-
lant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F.
CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

Appellant was indicted charged with unlawfully de-
taining a woman against her will with intent to have
carnal knowledge of her himself, under the provisions of
section 1158, Ky. Stats., and upon his trial was found
guilty and sentenced to seven years' imprisonment.

The only ground of reversal is that the verdict is the
result of passion and prejudice, and is not supported by
the evidence.

The prosecuting witness testified she was fourteen
years of age, and that on a gloomy Sunday afternoon, No-
vember 15, 1925, shortly after four o'clock, she started
from her home in Louisville to a bakery about four blocks
distant, but that when she reached a point about half way
appellant came up behind her and put a heavy sack over
her face, and then took her across the street to an auto-
mobile which she was forced to enter; there was another
man in the automobile who did the driving, but she did
not know him; that the sack remained over her face for
some fifteen or twenty minutes, and when it was removed
by appellant they were in another part of the city; that
the machine was then driven to a rock quarry in the
country outside of the city, but by the time they reached
there it was dark.   That thereupon the driver left the
machine and went away some distance, and that defend-
ant then insulted her and used bad language, that he
pulled her hair and kicked her, and afterwards said,
"'Come on let's be friends,'" and when she declined he

said, "Well, come on I want to do something to you," and when she told him she wasn't that kind of a girl he shortly thereafter called the driver and they went back to town; that at the time he made this proposal to her she was on the floor of the machine where he had thrown her, and that she was resisting his advances and was unwilling to have sexual intercourse with him. She testifies that upon the return trip they stopped at a pool room which the evidence shows was a sort of headquarters of appellant and that he there directed the driver to go in and telephone to a named young woman, one of the appellant's intimates, and that while the driver was gone witness undertook to leave the machine and he detained her. She also testifies that some two or three nights before this occurrence appellant and another man she did not know came to her home accompanied by the same woman he had directed the driver to telephone, and they sent that woman into her home to try to induce her to go driving with them in the machine, and that she had declined. She also testifies that on the trip to the rock quarry he seemed to be angry because she had refused to go riding with him upon the previous occasion, and that after leaving the pool room appellant threw her out of the machine and she immediately went into a home nearby, rang the bell and asked for a pencil and paper upon which she desired to make a memorandum of the number of the machine.

She does state in one part of her evidence that while at the rock quarry defendant did not undertake to do anything to her, or put his hands on her person, or under her clothing, but in another part of her evidence she states that defendant's trousers were unfastened and that he did have hold of her underwear.

The evidence of the prosecuting witness is corroborated, to that extent, by the woman whose door bell she rang and asked for the paper and pencil, and that witness says she was then very nervous and excited. It is also corroborated by the statement of the young woman who went into her home a few nights before and tried to induce her to go riding with appellant and others, and her mother further corroborates her evidence by stating about what time she left home and about what time she returned, and that when she did return she was nervous and excited, her hair was disarranged, and her clothes in a mess.

On the other hand, the evidence of the defendant is that he did not know the prosecuting witness and had never seen her until this charge was brought against him. He also testifies to a state of case which if believed by the jury would make for him a complete *alibi.* He states, in substance, that up to five o'clock that afternoon he was at a shop near the pool room mentioned, undertaking to repair or have repaired his motorcycle which he used in his capacity as a county police officer and that about that time he went to a fire in the country near Louisville and did not come back to the city until after the time fixed by the prosecuting witness of the occurrences detailed by her. Many of his statements are corroborated by other witnesses introduced by him, and the earnest contention is made that the evidence as a whole is insufficient to support the verdict. And this argument is further strengthened by the admitted fact that the prosecuting witness upon her return home the night of this occurrence told her mother that Paul Graham was the man who had detained her, and that she did not enlighten her mother upon that subject for two weeks thereafter. She explains, however, that she knew no man named Paul Graham, and had never heard of any such man, but that appellant told her to say that was the man's name and threatened her life if she did not do so, and that she, in fear of him, had done as he directed. There is also evidence that the night after this occurrence she stated she did not know who the man was, that she had never seen him before, and yet the prosecuting witness in open court fully identified the defendant as the man who had detained her upon the occasion in question.

The evidence for the Commonwealth and the evidence for the defendant is irreconcilable, and yet it is impossible to say that if the jury believed this prosecuting witness' evidence that they were not authorized to return a verdict of guilty. The fact that the jury gave the defendant the limit under the statute in the face of the strong evidence of an *alibi,* and in the face of the prosecuting witness' admission that she had told her mother her assailant was Paul Graham, is convincing that the jury had little doubt of the defendant's guilt.

On a charge of rape or attempted rape the crime is incomplete unless there is evidence of force to such extent as to overcome the will of the woman, and a forcible act is committed; but under the terms of this statute,

while the detention must exist as in rape and attempted rape, the crime may be complete without the commission of any act evidencing a purpose to carnally know the woman against her will. If she be only detained against her will, with such purpose, even though it be intended only to accomplish the purpose by persuasion or other means short of force, the crime is complete. Copenhaver v. Com., 31 R. 1161; Gibson v. Com., 31 R. 945.

The evidence is hopelessly conflicting, but it would be inconsistent with the rules of law adopted by this court to say that it did not authorize the submission of this case to the jury, or was insufficient to support the verdict.

Judgment affirmed.